(21 App. Div. 1.)

### CORTIS v. DAILEY, Sheriff.

(Supreme Court, Appellate Division, Second Department. October 5, 1897.)

1. ESCAPE—ASSENT OF SHERIFF—EVIDENCE.

    A person in the custody of a sheriff by virtue of an execution in a civil action gave an undertaking, and was admitted to the liberties of the jail. He escaped therefrom, but returned before commencement of an action against the sheriff. The sheriff and undersheriff testified that neither they nor the deputies did in fact assent to the escape, and that they did not know of it till after the prisoner's return; but the sheriff had understood that the prisoner ought to be released by him, and had so informed one of the bondsmen. *Held*, that this did not in itself constitute an assent to the escape, under Code Civ. Proc. § 171, rendering the sheriff liable therefor, and, at most only raised a question of fact.

2. SAME—DISCHARGE OF SURETIES—EFFECT.

    The question whether the sheriff's statement to the bondsman discharged the latter from his obligation on the undertaking had no bearing on the question of the sheriff's liability to the judgment creditor.

3. SAME—JAIL LIBERTIES—UNDERTAKING.

    Code Civ. Proc. § 151, relating to execution against the person, provides that security taken by the sheriff on admitting a prisoner to the liberties of the jail is held as indemnity for both the sheriff and the party at whose suit the prisoner is confined. Section 152 provides that, if such

person discover that the security is insufficient, he may take proceedings for the commitment of the prisoner to close confinement. And section 155 declares that, to escape, the prisoner must go beyond the jail liberties. *Held* that, so long as the sheriff keeps the prisoner within the jail liberties, he is not chargeable with liability for an escape, whether or not he has taken any undertaking for the limits.

4. SAME—NONDELIVERY—EFFECT.

The failure of a sheriff to deliver the undertaking to the person at whose instance the prisoner is in custody (Code Civ. Proc. § 150) is a mere omission, having no essential bearing upon the question of an alleged escape.

Appeal from trial term, Richmond county.

Action by Arthur M. Cortis against John L. Dailey, sheriff of Richmond county. From a judgment entered on a verdict in favor of defendant, and from an order denying a new trial, plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Everett P. Wheeler, for appellant.

Walter T. Elliott, for respondent.

BRADLEY, J.    The plaintiff charges that the defendant became liable to him for the voluntary escape of one Charles O'Donnell, who was arrested upon an execution against his person, issued on a judgment recovered against him by the plaintiff.    It appears that O'Donnell was arrested by the defendant upon such execution on or about December 13, 1895; and afterwards, on or about the 20th of that month, upon the delivery of the requisite undertaking, he was admitted to the liberties of the jail of Richmond county, which liberties were co-extensive with the county.    He was on the Staten Island ferryboat, which left New York for that island at 12:20 o'clock, on Sunday morning, March 15, 1896.    When the boat landed on the island, he became unconscious, was carried from the boat, and died soon after, in Richmond county.    It does not appear when he left there and went to New York.    This action was commenced in April, 1897.    The absence of O'Donnell from the liberties of the jail at any time, without the assent of the plaintiff, was an escape.    Code Civ. Proc. § 155.    And, if the escape was voluntary,—that is, with the assent of the defendant,—the latter was not relieved from liability by the return of the prisoner.    Otherwise, his return to the liberties of the jail, where he died before the suit was commenced, constituted a defense.    Id. § 171.    The escape of a prisoner in custody on execution is either voluntary or negligent.    In the former case the escape is not purged by his return.    It is otherwise in case of a negligent escape, if he returns before suit is instituted against the sheriff. Littlefield v. Brown, 1 Wend. 398; Lansing v. Fleet, 2 Johns. Cas. 3. That was matter of defense for the defendant, who furnished evidence to the effect that he had not assented to the departure of the prisoner from the limits or liberties of the jail.    It appeared, however, that in some correspondence between the plaintiff's attorney and the defendant, instituted by letter of inquiry to the latter, shortly after the death of O'Donnell, the defendant, in his first letter, stated that

the prisoner had been released from custody by order of the county judge, "and we have had no control of the matter for a considerable length of time"; and in his later letter he said: "There appears to be a misunderstanding between County Judge Stephens and myself, for I certainly understood him to say that the man should be released. From a conversation with him to-day, he informs me such was not the case; that he only advised me to return the execution. I still have the bond in my possession, but, acting under what I supposed was Judge Stephens' advice, my impression is I informed the bondsman to that effect." The defendant's testimony is that those letters were dictated by him under a misapprehension, and that the arrest of O'Donnell was made by the undersheriff, who testified that he had not assented to any departure of the prisoner from the liberties of the jail. It is urged by the learned counsel for the plaintiff that from this evidence the conclusion was required that the defendant assented to the release of the prisoner from custody. And he further contends that the defendant's notice to the bondsman, to the effect that the matter was closed, was a release by him of the prisoner from that relation. Assent implies permission. The evidence upon the part of the defendant is that neither he personally, nor through his undersheriff or any of his deputies, assented that the prisoner leave the liberties, and that he did not know that he was or had been absent from there until informed of it after his death; and the evidence of the undersheriff, who more directly had charge of the matter, was to the same effect. Information given by the defendant to the surety in the undertaking for the limits was not necessarily in its effect permissive to the prisoner to leave, nor was the surety by that means constituted the representative of the defendant to communicate such information to the prisoner, if he had been so disposed. It does not appear that he did have any communication with him upon the subject.

The most that can well be claimed on the part of the plaintiff is that the question whether the escape of the prisoner was voluntary was one of fact for the jury, upon the evidence. The question was submitted to them by the charge of the court fairly, and as favorably to the plaintiff as was justified by the evidence. It is urged, however, that, by stating to the surety that the matter was settled, the defendant discharged him from the obligation created by the undertaking, and that, as the consequence, released the prisoner from custody. The question whether the surety was discharged is not necessarily here for consideration, upon the facts presented. He is not seeking to be relieved. If the defendant was liable as for a voluntary escape of the prisoner, he would not be entitled to indemnity upon the undertaking of the surety; and, if the escape was not voluntary, the defendant, as before observed, is not liable to the plaintiff, because the prisoner returned to the limits before suit. It would therefore seem that the undertaking has no essential significance in the present case. Prior to the Revised Statutes it was provided that a bond taken for jail limits was for the indemnity of the sheriff only (1 Rev. Laws, p. 429, § 6); but the right to assignment of the bondsman was given to the party at whose instance the prisoner was confined (Id. § 7). While, as the statute then was, it was necessary for a

person arrested on final process against his person to furnish such security to entitle him to the liberties of the jail, security was not essential to permit the sheriff to grant them to him.    The reason for this was in the fact that the liberties or limits were, as they are now, considered a mere extension of the walls of the jail, and the sheriff might, without the use of bars and bolts, take the responsibility of keeping the prisoner in his custody within such limits.    Peters v. Henry, 6 Johns. 121; Jansen v. Hilton, 10 Johns. 549; Barry v. Mandell, Id. 563; Devlein v. Cooper, 84 N. Y. 416; Wemple v. Glavin, 57 How. Prac. 109.    By the Revised Statutes it was provided that such security taken by the sheriff in admitting a person to the liberties should be held as indemnity for both the sheriff and the party at whose suit the prisoner was confined (2 Rev. St. p. 434, § 43); and such is the provision of the present statute (Code Civ. Proc. § 151).    The right of the judgment creditor to resort to the undertaking is practically the same as it was under the Revised Laws and the Revised Statutes, although no formal assignment is necessary.    The statute as amended in 1886 also provides that, if the person at whose instance the prisoner is in custody discovers that the surety in the undertaking for the liberties is insufficient, he may take proceedings for commitment of the prisoner to close confinement.    Code Civ. Proc. § 152.    But it may be observed that, to constitute an escape, the prisoner must go beyond the jail liberties.    Id. § 155.    It would seem to follow that, so long as the sheriff keeps a person imprisoned on final process within those liberties, he cannot be chargeable with liability for an escape, whether he has or has not taken any undertaking for the limits; and that, subject to such rights as the creditor may have to take proceedings for the close confinement of the prisoner for want of an undertaking, the rule is the same as that announced by the court in Peters v. Henry, supra, to the effect that the sheriff is permitted without security to admit such a person to the limits.

The failure (urged upon our attention) of the sheriff to deliver the undertaking to the plaintiff, as provided by the statute (Code Civ. Proc. § 150), was a mere omission of the defendant to do his duty in that respect, and can have no essential bearing upon the question of the alleged escape.    It is not seen that the disposition made of the questions of fact by the verdict of the jury was against the weight of the evidence, in the view they were permitted to take of it.

The judgment and order should be affirmed.    All concur.